# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

KRISTINE RAEL,

      Plaintiff,

v.                                                                    Civ. No. 17-338 SCY/LF

GEICO GENERAL INSURANCE
COMPANY,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND

**THIS MATTER** is before the Court on Plaintiff Kristine Rael's Motion to Remand, filed April 13, 2017. Doc. 12. Plaintiff asserts that the Court lacks diversity jurisdiction in this case because the amount in controversy is less than $75,000. For the reasons set forth below, Plaintiff's motion to remand is **denied**.

## I.  Background

On February 2, 2017, Plaintiff filed suit against Defendant for recovery of uninsured motorist benefits in the First Judicial District Court for the State of New Mexico. Doc. 1-1 (Ex. A). In her single-count complaint, Plaintiff alleges she was in an automobile collision on January 22, 2013 that was caused by the other driver's negligence. *Id*. ¶¶ 13-17. At the time of her accident, Plaintiff had uninsured/underinsured motorist coverage from Defendant GEICO General Insurance Company. *Id*. ¶ 4. Having settled her liability claims against the other driver, Plaintiff asserts in her complaint that she is entitled to underinsured motorist benefits from Defendant because her damages exceed the other driver's available liability limits. *Id*. ¶¶ 22-25. Plaintiff specifically seeks damages for past and future medical expenses, past and future pain and suffering, and lost wages. *Id*. ¶¶ 18-21.

On March 14, 2017, Defendant removed the case to this Court, asserting federal subject matter jurisdiction on the basis of diversity of citizenship. *See* Doc. 1. In its notice of removal, Defendant asserted that its citizenship is diverse from that of Plaintiff because Plaintiff is a citizen of New Mexico and Defendant is a Maryland corporation with its principal place of business in Maryland. *Id*. at 2. Defendant also asserted that the amount in controversy exceeds $75,000. *Id*. at 3-5. On April 13, 2017, Plaintiff filed the present motion to remand this case to state court, arguing that the Court lacks jurisdiction over this case because Defendant has failed to meet its burden of showing that the amount in controversy exceeds $75,000. *See* Doc. 12. This is the sole issue raised by Plaintiff in her motion to remand.[1]

## II.  Standard of Review

An action is removable from state court if the federal district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), a federal district court possesses original subject matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000). The Tenth Circuit Court of Appeals has defined "amount in controversy" as an "estimate of the amount that will be put at issue in the course of the litigation." *See McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008).

If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is "deemed to be the amount in controversy." § 1446(c)(2). When the plaintiff's initial pleading seeks nonmonetary relief or does not state the amount in controversy, the defendant's notice of removal may do so. § 1446(c)(2)(A). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by

---

[1] Plaintiff does not contest that diversity of citizenship exists between the parties. *See* Doc. 12 at ¶ 3.

§1446(c)(2)(B) only when the plaintiff contests, or the court, questions the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owen*, 135 S.Ct. 547, 554 (2014). Thus, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 135 S.Ct. at 553.

If the defendant's allegation regarding the amount in controversy is contested, Section 1446(c)(2)(B) provides that "removal of the action is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional minimum. As the Supreme Court has explained, "[t]his provision . . . clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *See Dart Cherokee*, 135 S.Ct. at 554. A defendant seeking removal can establish jurisdictional facts by a preponderance in a number of ways:

> by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands.

*McPhail*, 529 F.3d at 954 (quoting *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 541-42 (7th Cir. 2006)). If a defendant is able to prove these jurisdictional facts, the matter should stay in federal court "unless it is 'legally certain' that less than $75,000 is at stake."[2] *McPhail*, 529

---

[2] Because 28 U.S.C. § 1332 provides for jurisdiction "where the matter in controversy exceeds the sum or value of $75,000", a controversy valued at exactly $75,000 does not give rise to federal jurisdiction. *See* 14AA Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 3701 (4th ed.) ("An allegation of exactly $75,000, therefore, is insufficient"); *see also Freeland v. Liberty Mut. Fire Ins. Co.,* 632 F.3d 250, 252 (6th Cir.2011) (finding federal court lacked jurisdiction where amount in controversy was exactly $75,000).

F.3d at 954; *see also Hammonds v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016) ("to justify dismissal under this standard it must appear to a legal certainty that the claim is really for less than the jurisdictional amount").

### III. Analysis

In this case, the allegations in Plaintiff's complaint did not provide sufficient information from which to determine the amount in controversy. Consistent with New Mexico's pleading rules, Plaintiff's complaint did not specify a monetary amount for damages. *See* NMRA 1-008 (stating that a "complaint shall not contain an allegation for damages in any specific monetary amount"). Although Plaintiff alleged that she sustained "serious injuries" in the automobile accident that necessitated medical treatment, Plaintiff did not describe the nature of these bodily injuries or the extent of the medical treatment she received in her complaint. *See* Doc. 1-1 at ¶¶ 18-19. Additionally, while Plaintiff sought damages for past and future medical expenses, past and future pain and suffering, and lost wages, *id*. at ¶¶ 19-21, she did not allege any facts from which to estimate the amount of these damages. Likewise, while Plaintiff alleged that her damages exceeded the other driver's policy limits, she did not indicate what the other driver's policy limits were or the amount of the settlement she received from the other driver. *Id*. at ¶¶ 22-23. Plaintiff also did not set forth the amount of UM/UIM coverage available under her GEICO insurance policy.

Since the amount in controversy could not be ascertained based on the contents of the initial pleading, Defendant was required in its notice of removal to "show how much is in controversy through other means." *McPhail*, 529 F.3d at 955. Defendant chose to do so by relying on Plaintiff's initial settlement demand. *See id*. at 956 (stating that documents "demonstrat[ing] plaintiff's own estimation of its claim are a proper means of supporting the

allegations in the notice of removal"). Defendant specifically alleged that the amount in controversy was met based on Plaintiff's initial settlement demand for $145,000 that she sent to Defendant in a letter dated July 29, 2016. *See* Doc. 1-1 (Ex. E).

In her detailed July 29 letter, Plaintiff supported her $145,000 demand by: 1) indicating that she has total UM/UIM limits of 300,000/900,000 under her policy; 2) providing a thorough summary of her medical treatment to date; and 3) itemizing damages in the amount of $25,013.90 in past medical expenses, $10,000 in future medical expenses, past and future pain and suffering damages for a 27-year period, and lost wages in the amount of $2,100. *See* Doc. 1-1 (Ex. E). With regard to medical issues, the demand letter detailed Plaintiff's persistent neck, shoulder, and back pain as a result of the accident. *Id*. Medical providers treated this pain with prescription medication and multiple rounds of physical therapy over a two-year period. *Id*. Plaintiff further cited to an increased frequency of migraine headaches, an aggravation or exacerbation of preexisting conditions in her spine, a loss of sleep due to the pain, significant discomfort in performing her job as a piano teacher, and the inability to stand for long periods of time. *Id*.

Defendant's citation to the facts Plaintiff represented in her July 29 letter establish jurisdictional facts by a preponderance of the evidence. Further, the allegations Plaintiff set forth in her letter preclude a finding that it is legally certain that less than $75,000 is at stake. Plaintiff's letter alleges serious life-long injuries, a lengthy duration of medical treatment, extensive pain and suffering, and $35,000 in past and future medical expenses. At least one judge in this district has noted that "[i]t is common in personal injury cases to settle on the basis of three times the medical expenses." *Aranda v. Foamex Intern.*, 884 F.Supp.2d 1186, 1207 (D.N.M. 2012). Even deducting the $25,000 Plaintiff already received from the tortfeasor, this

formula would value Plaintiff's claim at $80,000. Of course, rather than blindly being applied, this formula must give way to the particular facts of a case. Take a plaintiff, for instance, who, as a precautionary measure, receives a CT scan, an MRI and numerous other expensive medical procedures after an automobile accident that result in a total medical bill of $35,000. If that plaintiff incurs no actual injury, his case will not be worth anywhere close to $105,000. Conversely, a young plaintiff who expends only $5,000 to learn that he sustained a severe and untreatable herniated disk in a car accident will have a claim worth more than $75,000.

Plaintiff asserts that, as of July 29, 2016, she had already endured more than three years of pain and suffering, could expect to have to endure pain and suffering for an estimated 27 years all together, and that her medical expenses were less than they might have otherwise been because she could not afford to have three MRIs that were ordered (Doc. 1-1 at 17-18). These allegations do not indicate that her medical costs over-represent her pain and suffering. Moreover, Plaintiff herself, by offering to settle the case for $145,000, indicated that at least $145,000 was at stake. Thus, the alleged facts set forth in Plaintiff's July 29 letter preclude a finding by legal certainty that $75,000 or less is at stake.

Given Plaintiff's July 29 letter, the next question is whether Plaintiff's reduced settlement offer of $75,000 that she made on February 1, 2017 (the day before she filed her lawsuit) or the affidavit from her counsel swearing that she would neither seek nor keep an award in excess of $75,000, filed with her Reply on May 16, 2017, changes the above conclusion. *See* Doc. 1-1 at 26, Doc. 22-1 at 1 (2/1/17 settlement letter and 5/16/17 affidavit, respectively). Regarding the February 1 settlement offer, a "plaintiff's proposed settlement amount is relevant evidence of the amount in controversy *if it appears to reflect a reasonable estimate of the plaintiff's claim.*" *McPhail*, 529 F.3d at 956 (emphasis added) (internal quotations and citations omitted). In this

letter, Plaintiff did not explain the basis for her reduced settlement demand and it does not appear that any of the facts that supported the $145,000 settlement demand had changed. Further, agreeing to settle a case for $75,000 is not tantamount to stipulating that $75,000 or less is at stake. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) (non-binding disclaimers have no legal effect). Absent evidence that the facts supporting the $145,000 settlement demand changed, the revised settlement demand fails to demonstrate that less than $75,000 was at stake at the time Plaintiff filed her lawsuit.[3]

More recently, as an exhibit to her Reply, Plaintiff submitted an affidavit from her counsel stipulating that she would not seek or retain more than $75,000. Thus, the Court is next confronted with the question of whether this stipulation came too late. United States District Court Judge Judith C. Herrera recently addressed this precise issue in *Miranda v. Strike, LLC et al.*, Civ. No. 16-1062 JCH/WPL (D.N.M. May 16, 2017). There, Judge Herrera stated, "binding precedent makes clear that a plaintiff cannot defeat subject matter jurisdiction simply by filing a post-removal stipulation to reduce the amount in controversy." *Id.* at 4. The binding precedent to which Judge Herrera referred is the Supreme Court's decision in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938).

In *St. Paul*, the Supreme Court stated that where, as in that case, "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his [or her] pleadings, reduces the claim below the requisite amount, this does not deprive the court of jurisdiction." *Id.* at 292. Once the district court's jurisdiction attaches at the time of removal, post-removal events "which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his [or her]

---

[3] However, had Plaintiff entered a binding stipulation prior to removal that she would not seek or retain more than $75,000 exclusive of interests and costs, the Court's conclusion would have been different. Under those circumstances, even though the facts had not changed, a legal certainty would exist that Plaintiff could not recover more than $75,000.

volition, do not oust the district court's jurisdiction." *Id*. at 293. The Supreme Court explained that

> [w]e think this well established rule is supported by ample reason. If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice. The claim ... fixes the right of the defendant to remove, and the plaintiff ought not be able to defeat that right and bring the cause back to state court at his [or her] election.

*Id*. at 294. Thus, once the district court's diversity jurisdiction attaches at the time of removal, a plaintiff may not subsequently divest the court of jurisdiction and force remand to state court by reducing the amount in controversy. *See Miera v. Dairyland Ins. Co*., 143 F.3d 1337, 1340 (10th Cir. 1998) (acknowledging the principle from *St. Paul* that "[o]nce jurisdiction has attached, events subsequently defeating it by reducing the amount in controversy are unavailing"). Because the Court has determined that diversity jurisdiction existed at the time of removal, Plaintiff's post-removal affidavit does not provide sufficient grounds for remanding this action to state court.

    Finally, Defendant's offer to settle Plaintiff's claim for $4,000 during the course of pre-litigation settlement negotiations does not undermine this conclusion. *See* Doc. 12-1 (Ex. 1 and 2) (Defendant's settlement offer). Plaintiff cites no authority, and the Court is aware of none, supporting the proposition that a defendant's settlement offer, as opposed to a plaintiff's settlement offer, is dispositive of the amount in controversy. *See Stevenson v. Schneider Elec. U.S.A., Inc.*, 2014 WL 789081, at *5 (D. Colo. Feb. 27, 2014) (stating that "although a plaintiff's offer of settlement can be used to establish the amount in controversy, the Court is aware of no authority stating that defendant's offer of settlement is entitled to the same presumption."). This makes sense, as the dispositive question is whether jurisdictional facts make it "*possible* that $75,000 was in play . . . ." *McPhail*, 529 F.3d at 955. While a defendant's offer might be relevant

to determining the low end of money at play, a plaintiff's offer, and the facts associated with it, is more determinative of the upper end of money at play. The Court finds that the facts set forth in Plaintiff's July 29 letter demonstrate that more than $75,000 was at stake at that time of the letter and, just as importantly, nothing indicates that the facts supporting that amount changed prior to the time Defendant removed this lawsuit to federal court.

## IV. Conclusion

Based on the foregoing, the Court determines that Defendant has "proved the facts necessary to establish that more than $75,000 [is] in controversy." *See McPhail*, 529 F.3d at 957. The Court further concludes that it was not legally certain at the time of removal that Plaintiff would recover $75,000 or less. *Id.* Accordingly, Plaintiff's Motion to Remand (Doc. 12) is **DENIED**.

**IT IS SO ORDERED**.

UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**